Slip Op. 18-181

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HAIXING JINGMEI CHEMICAL PRODUCTS SALES CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ARCH CHEMICALS, INC., <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Judge <br> Court No. 17-00084 <br><br> **PUBLIC VERSION** |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's Remand Results rescinding the new shipper review of Haixing Jingmei Chemical Products Sales Co., Ltd.]

Dated: December 27, 2018

<u>Gregory S. Menegaz</u>, <u>J. Kevin Horgan</u>, and <u>Alexandra H.  Salzman</u>, deKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff.  With them on the brief was <u>Judith L. Holdsworth</u>.

<u>Joshua E. Kurland</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With him on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the brief was <u>Natan P. Tubman</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Peggy A. Clarke</u>, Law Offices of Peggy A. Clarke, of Washington, DC, for Defendant-Intervenor.

Barnett, Judge: This matter is before the court following the U.S. Department of

Commerce's ("Commerce" or the "agency") redetermination upon remand. *See*

Confidential Final Results of Redetermination Pursuant to Court Remand ("Remand

Results"), ECF No. 46.  Plaintiff, Haixing Jingmei Chemical Products Sales Co., Ltd.

("Plaintiff" or "Jingmei") initiated this action challenging Commerce's final decision to

rescind the new shipper review of the countervailing duty order on calcium hypochlorite

from the People's Republic of China ("PRC" or "China").  *See Calcium Hypochlorite*

*from the People's Republic of China*, 82 Fed. Reg. 15,494 (Dep't Commerce Mar. 29,

2017) (final decision to rescind the countervailing duty new shipper review of Haixing

Jingmei Chemical Products Sales Co., Ltd.) ("*Final Rescission*"), ECF No. 18-2, and

accompanying Issues and Decision Mem., C-570-009 (Mar. 23, 2017) ("I&D Mem."),

ECF No. 18-3.[1]  Plaintiff argued that Commerce's rescission of the new shipper review

due to purportedly insufficient information to conduct the *bona fide* analysis of Plaintiff's

sale during the period of review ("POR") was unsupported by substantial evidence and

contrary to law.[2]  *See* Confidential Pl. Haixing Jingmei Chemical Products Sales Co.,

---

[1] The administrative record is divided into a Public Administrative Record ("PR"), ECF No. 18-5, and a Confidential Administrative Record ("CR"), ECF No. 18-4.  Parties submitted joint appendices containing all record documents cited in their United States Court of International Trade Rule 56.2 briefs. *See* Public J.A. ("PJA"), ECF No. 34; Confidential J.A. ("CJA"), ECF Nos. 33 (apps. 1-12), 33-1 (apps. 13-23). The administrative record associated with the Remand Results is contained in a Public Remand Record ("PRR"), ECF No. 48-2, and a Confidential Remand Record ("CRR"), ECF No. 48-3.  Parties submitted supplemental joint appendices containing record documents cited in their Remand briefs. *See* Public Suppl. J.A. ("PSJA"), ECF No. 58; Confidential Suppl. J.A. ("CSJA"), ECF No. 57. References are to the confidential versions of the relevant record documents unless stated otherwise.

[2] There was only one reviewable sale of subject merchandise to the United States during the POR.  Remand Results at 2-3.  The sale involved Haixing Eno Chemical Co., Ltd. ("Eno"), as producer, and Jingmei as seller.  *Id.* at 3. Jingmei sold the calcium

Ltd. Mem. in Supp. of Mot. for J. on the Agency R. ("Pl.'s Br.") at 1, 12-29, ECF No. 23;

Pl. Haixing Jingmei Chemical Products Sales Co., Ltd. Reply Br. at 6-12, ECF No. 32.

Plaintiff also argued that the agency's decision to rescind the review amounted to an

adverse inference against Jingmei, a cooperating party.  Pl.'s Br. at 35-36.

    On April 10, 2018, the court remanded the *Final Results*, holding that

Commerce's rescission due to insufficient information to conduct the statutory *bona fide*

analysis of Plaintiff's sale was not supported by substantial evidence when considering

the agency's statutory authority to use facts available, with or without an adverse

inference, to fill any asserted gaps in the record.  *See Haixing Jingmei Chem. Prod.*

*Sales Co. Ltd., v. United States ("Haixing CVD I")*, 42 CIT __, 308 F. Supp. 3d 1366

(2018).[3]  The court ordered Commerce "to determine whether Plaintiff's sale during the

period of review was *bona fide*," *id.* at 1373, such that the court could better "evaluate

whether that redetermination is supported by substantial evidence and otherwise in

accordance with law," *id.* at 1372 (quoting *Haixing Jingmei Chem. Prod. Sales Co. Ltd.,*

*v. United States ("Haixing AD I")*, 41 CIT ___, ___ 277 F. Supp. 3d 1375, 1383 (2017)).

    In its Remand Results, Commerce used partial facts available with an adverse

inference (sometimes referred to as "adverse facts available" or "AFA") to determine

whether Jingmei's sale was indicative of a *bona fide* transaction.  Remand Results at 8-

9, 13-14, 30; 60-63.   Specifically, Commerce used adverse inferences only in analyzing

---

hypochlorite to [[                                              ]], a [[              ]] based reseller
of swimming pool supplies—denoted here for confidentiality purposes as Company X—
who then sold the merchandise to [[                                        ]], a U.S.
customer—denoted here for confidentiality purposes as Company Y.  *Id.*
[3] The court's opinion in *Haixing CVD I,* 308 F. Supp. 3d 1366, presents further
background information on this case, familiarity with which is presumed.

whether the sale price was indicative of a *bona fide* transaction and whether the subject

merchandise was resold at a profit.  *Id.* at 13-14, 30.  Based on the totality of the

circumstances, Commerce concluded that Jingmei's sale was not *bona fide* and,

therefore, rescission of the new shipper review was appropriate. *Id.* at 1-2.  Jingmei now

challenges Commerce's Remand Results as unsupported by substantial evidence. *See*

Confidential Pl. Haixing Jingmei Chem. Prods. Sales Co., Ltd. Comments in Opp'n to

U.S. Dep't of Commerce's Remand Redetermination ("Pl.'s Opp'n Cmts"), ECF No. 49.

The United States ("Defendant" or the "Government") and Defendant-Intervenor, Arch

Chemicals Inc., support Commerce's redetermination.  *See* Confidential Def.'s Resp. to

Pl.'s Comments on the Dep't of Commerce's Remand Results ("Def.'s Supp. Cmts"),

ECF No. 55; Confidential Def-Int. Arch Chems., Inc. Reply to Pl.'s Comments in Opp'n

to U.S. Dep't of Commerce's Remand Redetermination, ECF No. 53 ("Def.-Int.'s Supp.

Cmts").  For the following reasons, the court sustains the Remand Results.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[4] and 28 U.S.C. § 1581(c) (2012).

The court will uphold an agency's determination that is supported by substantial

evidence on the record and otherwise in accordance with law.  19 U.S.C.

§ 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also

---

[4] Citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19
of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. §§ 1675 and 1677e, however,
are to the unofficial U.S. Code Annotated 2016 edition, which reflects amendments to
section 1675 pursuant to the Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114–125, § 433, 130 Stat. 122 (2016), and amendments to section 1677e
pursuant to the Trade Preferences Extension Act of 2015, Pub. L. No. 114–27, § 502,
129 Stat. 362, 383–84 (2015).

reviewed for compliance with the court's remand order." *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (citation and internal quotation marks omitted).

DISCUSSION

## I.   Legal Framework

### a.   New Shipper Reviews

Pursuant to 19 U.S.C. § 1675(a)(2)(B)(i), when Commerce receives a request from a new exporter or producer who did not export merchandise subject to a countervailing duty order to the United States during the period of investigation, and is not affiliated with any exporter or producer that did export, Commerce must conduct a review to establish an individual countervailing duty rate for that exporter or producer. Commerce must determine an individual countervailing duty rate based solely on *bona fide* sales to the United States during the period of review. *See* 19 U.S.C. § 1675(a)(2)(B)(iv).  Commerce determines whether a sale is *bona fide* by considering, "depending on the circumstances surrounding such sales," the following factors:

> (I) the prices of such sales; (II) whether such sales were made in commercial quantities; (III) the timing of such sales; (IV) the expenses arising from such sales; (V) whether the subject merchandise involved in such sales was resold in the United States at a profit; (VI) whether such sales were made on an arms-length basis; and (VII) any other factor the administering authority determines to be relevant as to whether such sales are, or are not, likely to be typical of those the exporter or producer will make after completion of the review.

19 U.S.C. § 1675(a)(2)(B)(iv).

In the absence of "an entry and sale to an unaffiliated customer in the United States of subject merchandise," Commerce may rescind the review. 19 C.F.R.

§ 351.214(f)(2)(i).  A sale that Commerce "determines not to be a *bona fide* sale is, for

purposes of [§ 351.214(f)(2)], not a sale at all."  *Shijiazhuang Goodman Trading Co.,*

*Ltd. v. United States*, 40 CIT ___, ___, 172 F. Supp. 3d 1363, 1373 (2016).  Thus, if

Commerce excludes all subject sales as non-*bona fide*, it "necessarily must end the

review, as no data will remain on the export price side of Commerce's [countervailing]

duty calculation."  *Tianjin Tiancheng Pharm. Co., Ltd. v. United States ("TTPC")*, 29 CIT

256, 259, 366 F. Supp. 2d 1246, 1249 (2005).

### b.  Facts Available with an Adverse Inference

When "necessary information is not available on the record," or an interested

party "withholds information" requested by Commerce," "fails to provide" requested

information by the submission deadlines, "significantly impedes a proceeding," or

provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i),

Commerce "shall . . . use the facts otherwise available." 19 U.S.C. § 1677e(a).[5]

Additionally, if Commerce determines that the party "has failed to cooperate by not

acting to the best of its ability to comply with a request for information," it "may use an

inference that is adverse to the interests of that party in selecting from among the facts

otherwise available."  *Id.* § 1677e(b).  "Compliance with the 'best of its ability' standard

is determined by assessing whether a respondent has put forth its maximum effort to

provide Commerce with full and complete answers to all inquiries in an investigation."

*Nippon Steel Corp. v. United State*s, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

---

[5] Commerce's authority to use the facts otherwise available is subject to 19 U.S.C.
§ 1677m(d). *See* 19 U.S.C. § 1677e(a).

II.    **Commerce's Findings in the Remand Results**

In the Remand Results, Commerce conducted the *bona fide* analysis of the sale subject to the review by evaluating the factors enumerated in 19 U.S.C. § 1675(a)(2)(B)(iv).  Remand Results at 7-34.  Commerce explained that, following receipt of Jingmei's initial questionnaire responses, the agency determined it needed additional information from Jingmei, Company X, and Company Y to analyze the *bona fide* factors outlined in the statute.  *Id*. at 6.  Commerce issued four supplemental questionnaires requesting information it deemed necessary to conduct its analysis.  *Id*. Commerce found that, in certain circumstances, Jingmei, Company X, and Company Y failed to cooperate to the best of their abilities in responding to Commerce's information requests.  *Id*. at 8, 60-63.  Using the available record information and relying, in part, on adverse inferences, Commerce made the following findings and offered the following explanations.

a.  **Price of the Sales**

Commerce found that the price factor of section 1675(a)(2)(B)(iv)(I) weighed against a finding that Jingmei's sale was *bona fide*.  *Id*. at 14.  The agency explained that it typically examines the sale price to determine whether it was "based on normal commercial considerations" and is indicative of a "company's typical sales activity."  *Id.* at 9 & n.41 (citing, *inter alia*, *TTPC*, 29 CIT at 260, 366 F. Supp. 2d at 1250).  In analyzing this factor, Commerce could not determine the amount of payment, whether payment was made, and if so, by whom.  *Id.* at 13.

Commerce initially received a commercial invoice listing the sales price for the sale.[6]  *Id.* at 10 & n.48 (citing Entry of Appearance and Req. for New Shipper Review (Nov. 20, 2015) ("NSR Request"), Ex. 2, CR 1, PR 1, CJA 4, PJA 4).   Commerce made a supplemental request to Jingmei seeking the sales ledger and accounting voucher recording the sale; in response, Jingmei submitted the requested documents, but they were insufficiently translated.  *Id.* at 10 & nn.49-50 (citing First Suppl. Questionnaire Resp. (July 22, 2016) ("First Suppl. QR") at 2-3 & Ex. SQ1-1, CR 16-18, PR 30, CSJA 11, PSJA 11).   Commerce made a second supplemental request for fully translated documents, to which Jingmei responded by providing the fully translated sales ledger and accounting voucher; however, the documents lacked any identifying information to tie the entry in the sales ledger to the sale at issue.  *Id.* at 10 & nn.52-54 (citing Second Suppl. Questionnaire Resp. (Aug. 24, 2016) ("Second Suppl. QR") at 1-2 & Ex. SQ2-1, CR 21-25, PR 34, CJA 13, PJA 13).[7]  Jingmei also submitted payment remittance documentation that Commerce deemed insufficient because it lacked details necessary to tie the documents to the commercial invoice, sales ledger, or accounting voucher.  *Id.* at 11 & n.59 (citing Second Suppl. QR, Ex. SQ2-3).

In an effort to examine both sides of the transaction, Commerce also issued a supplemental questionnaire to Company X requesting a detailed, step-by-step,

---

[6] Commerce compared the reported average unit value ("AUV") of Jingmei's sale to the AUV for all other entries of subject merchandise from China during the POR, as reflected in U.S. Customs and Border Protection's data, and determined that the reported value of Jingmei's sale was [[      ]] than the average entered value.  Remand Results at 9-10.

[7] Additionally, the sales ledger showed a booking date that was [[      ]] than the date Jingmei claimed it received payment for this sale.  *Id.* at 11 & n.56 (citing Second Suppl. QR, Exs. SQ2-1, SQ2-3).

explanation of its payment process for the merchandise, including payment

documentation.  *Id.* at 11-12 & nn.61-62 (citing First Suppl. QR at 10).  Company X did

not, however, provide a detailed explanation[8] and provided proof-of-payment

documentation that appeared to be a non-final transaction and lacking sufficient details

to conclusively support payment.[9]  *Id.* at 12 & nn.63-64 (citing First Suppl. QR at 10 &

Ex. SQ1-6).  Following another supplemental questionnaire seeking clarification of how

the documentation was linked to Jingmei and Company X, Company X claimed that the

document was a bank confirmation of its wired payment to Jingmei.  *See id.* at 12 &

nn.66-67 (citing Second Suppl. QR at 9).  Nevertheless, Commerce could not confirm

the payment.[10]

Commerce further explained that it twice requested an accounts payable ledger

or other accounting entries documenting Company X's purchases of subject

merchandise from Jingmei during the POR.  *Id.* at 12-13 & nn.68, 72 (citing Second

Suppl. QR at 10; Third Suppl. Questionnaire Resp. (Sept. 28, 2016) ("Third Suppl. QR")

---

[8] Company X responded generally, stating that it "arranged payment based on the sales terms as agreed in the purchase order or the commercial invoices on a transaction specific basis."  *Id.* at 12 & n.63 (quoting First Suppl. QR at 10).

[9] The documentation was a [[          ]] from a [[                    ]] that did not identify the [[          ]], *id.* at 12 & n.65 (citation omitted); it was dated August 26, 2015 and was titled "Importer's Wire Transfer Sheets," First Suppl. QR, Ex. SQ1-6 (wire transfer sheet).

[10] Company X stated that "since [the wire transfer sheet] was a response to Company X's instruction, it [was] not necessary to identify the [[          ]]."  Second Suppl. QR at 9.  Company X submitted a payment credit notice, dated August 27, 2015, from Jingmei's bank that identified Company X as the [[          ]] and Jingmei as the beneficiary.  *Id.*, Ex. SQ2-3.  Commerce found the credit notice to be insufficient because "[t]here [was] no reference information or invoice number . . . to link the payment to the commercial invoice, and it [could not] be tied to Jingmei's sales revenue ledger or accounting voucher."  Remand Results at 47 & nn.260-61 (citing Second Suppl. QR, Ex. SQ2-3).

at 6, CR 27-28, PR 38, CSJA 15, PSJA 15).  Company X, however, provided only a

"kind of payment ledger," explaining that it did "not maintain an accounts payable

ledger." *Id.* at 13 & nn.69-70 (citing Second Suppl. QR at 10 & Ex. SQ2-13; Fourth

Suppl. Questionnaire Resp., Part 1 (Nov. 14, 2016) ("Fourth Suppl. QR, Pt. 1") at 7, CR

32, PR 45, CSJA 17, PSJA 17); *see also id.* at 13 & n.73 (citing Third Suppl. QR at 6)

(Company X's third supplemental response referring to the previously submitted ledger).

Company X's version of a payment ledger "combine[d] multiple, unidentified invoices

into each entry," and lacked reference to any identifiers—such as expense type, invoice

number, or supplier name—that would tie the sale at issue with any of the ledger

entries.  *Id.* at 13 & n.71 (citing Second Suppl. QR at 2 & Ex. SQ2-13).[11]

Commerce determined that Jingmei and Company X failed to act to the best of

their abilities when responding to Commerce's requests for information "because they

did not provide information that they . . . could obtain, e.g., evidence of payment." *Id.* at

14.  A final payment transaction and a fully-translated ledger that can reasonably be tied

to the record is the type of reliable documentation that Commerce expects companies to

be able to provide. *Id.* at 14, 62.  Thus, Commerce found that Jingmei and Company X

demonstrated less than full cooperation in this review. *Id.* at 62-63.  "As adverse facts

available, [Commerce found] that the lack of reliable record information raise[d]

concerns that the price may not be indicative of future sales by Jingmei and weigh[ed]

against finding the sale *bona fide*." *Id.* at 14.

---

[11] Commerce also observed that Company X's claimed payment date did not
correspond to the date of entry in its payment ledger.  *Id.* at 48 & n.267 (citing First
Suppl. QR, Ex. SQ1-6 (wire transfer sheet); Second Suppl. QR, Ex. SQ2-13 (payment
ledger entries); *see also* Second Suppl. QR at 10 & Ex. SQ2-10 (tying "payment #5" in
the payment ledger to the sale under review).

### b.  Whether the Sale was Made in Commercial Quantities

Commerce explained that although an aberrational quantity may not be sufficient, by itself, to warrant a finding that a sale is not *bona fide*, when considered together with the totality of the circumstances of the sale, an aberrational quantity may inform the agency's overall decision.  *Id.* at 14.  Here, Commerce first compared the quantity of Jingmei's sale with the average quantity of other entries of subject merchandise from China during the POR.  *Id.* at 14-15.  The results of that comparison,[12] in conjunction with the totality of circumstances surrounding the sale, led Commerce to conclude that the quantity factor weighed against a finding that the sale was *bona fide*.  *Id.* at 15.

### c.  Timing of the Sale

Commerce next analyzed the timing factor of section 1675(a)(2)(B)(iv)(III) and determined that Company X's timing of payment to Jingmei suggested that the sale was not *bona fide*.  *See id.* at 15-18.  Commerce examined the payment terms for the sale and noted that Company X's payment was late. *Id.* at 17; *see also id.* at 50-52.  Commerce explained that although late payment alone may not indicate that a sale is not *bona fide*, the tardiness of the payment combined with other unusual characteristics surrounding this sale indicated that the sale was not *bona fide*. [13]  *Id.* at 17, 50-51.

---

[12] Commerce reviewed proprietary data concerning other U.S. entries of subject merchandise from China during the POR that it obtained from CBP, and determined that the quantity of Jingmei's sale was [[          ]] than the average quantity of those other imports.  Remand Results at 14-15.

[13] The payment was late by somewhere between [[    ]] and [[    ]] days late, depending on how one interprets the payment terms.  *Id.* at 17.  There was no record evidence to indicate that Jingmei [[                                    ]] or any explanation from Jingmei as to why it [[                                    ]].  *Id.* at 17, 50.

### d. Expenses Arising from the Sale

Pursuant to section 1675(a)(2)(B)(iv)(IV), Commerce considered the expenses related to Jingmei's sale, and whether those expenses were consistent with the terms of sale, to determine whether they conformed to Jingmei's typical sales practice.  *Id.* at 18-27; *see also id.* at 53-57.  Commerce explained that, to conduct its analysis, it required documentation supporting the amount and payment of each expense and documentation linking the expense payment to both the sale under review and the paying company's books and records.  *Id.* at 18.  Commerce requested information from Jingmei, Company X, and Company Y to confirm the sale terms and Jingmei's claims regarding the allocation and payment of expenses.  *Id.*

Regarding movement expenses, Commerce initially requested supporting documentation to confirm Jingmei's claim that Company X shipped the merchandise from Eno's facilities.  *Id.* at 19 & n.110 (citing First Suppl. QR at 3-4).  Jingmei failed to provide the documentation.  *Id.* & 19 & n.111 (citing First Suppl. QR at 3-4).  Commerce then requested that Jingmei explain and support with documentation each movement expense incurred from the time the merchandise left Eno's factory to the time Company Y received the merchandise.  *Id.* & 19 & n.112 (citing Second Suppl. QR at 5).  Jingmei stated that Company X was responsible for paying foreign inland freight and export brokerage and handling, and that Company Y was responsible for paying ocean freight and U.S. inland freight.  Second Suppl. QR at 5; *see also* Remand Results at 19 & n.112 (citation omitted).  Commerce found, however, that the documentation that Jingmei submitted did "not conclusively support [Company X's] and [Company Y's] purported payment of such expenses."  Remand Results at 19.  Commerce explained

that the brokerage and handling invoice that Jingmei submitted to document its claims

regarding Company X's payment of the expenses lacked reference to an invoice

number or any other identifier to tie the invoice to the sale under review.  *Id.* at 19 &

n.114 (citing First Suppl. Resp., Ex. SQ1-3).  The ocean freight invoice that Jingmei

submitted to document its claim that Company Y paid this expense was issued not to

Company Y, but to a different company.[14]  *Id.* at 20 & n.116 (citing Second Suppl. QR,

Ex. SQ2-6).

Commerce issued supplemental questionnaires to Company X and Company Y

requesting that they provide copies of ledgers where each company booked its

payments of the movement expenses.  *Id.* at 20 & n.118 (citing, *inter alia*, Third Suppl.

QR at 6-8).  Both companies submitted ledgers that "purportedly combine[d] multiple,

unidentified invoices into each entry, and lack[ed] reference to any identifiers, such as

detailed expense type, invoice number, or supplier name, that would tie the entries to

[Company X's] and [Company Y's] payment of its movement expenses."[15]  *Id.* at 20 &

n.119 (citation omitted); *see also* Third Suppl. QR at 6-7, 8-9 & Exs. SQ3-8, SQ3-12.

Additionally, Commerce noted other issues and inconsistencies specifically relating to

the documentation that Company Y submitted.  Remand Results at 21 & nn.121-24

---

[14] Commerce noted Jingmei's explanation that the owner of Company Y previously
owned the company to which the invoice was issued and Jingmei's claim that the
shipping company made an error when it issued the invoice to the wrong company.  *Id.*
at 20 & n.117 (citing Second Suppl. QR at 5).
[15] The companies submitted worksheets, which they claimed would reconcile the
"multiple payments" in the ledger entries; however, Commerce found the worksheets to
be equally deficient because other than providing "Payment # 1," "Payment # 2" and a
numeric amount associated with each "Payment," they lacked reference to any
identifiers that would enable Commerce to tie the payments to record documentation.
*Id.* at 20-21 & n.120 (citing Third Suppl. QR, Exs. SQ3-8, SQ3-12).

(citing Third Suppl. QR, Ex. SQ3-12).  In a final supplemental questionnaire to Company

Y, Commerce requested a reconciliation of Company Y's freight expenses to its tax

returns.  *Id.* at 23 & n.136 (citing, *inter alia*, Fourth Suppl. QR, Pt. 2 at 6).  Company Y

submitted the first page of its tax return but failed to submit the supporting tax forms and

worksheets corresponding to the line items referenced on that page.[16]  *Id.* at 23-24 & n.

137 (citing Fourth Suppl. QR, Pt. 2 at 6 & Ex. SQ4-11).

　　　With respect to the import duty, Jingmei claimed that Company X paid this

expense.  *Id.* at 24 & n.138 (citing Second Suppl. QR at 5).  Commerce instructed

Company X to submit documentation—including an accounting voucher, expense

ledger, and bank statement—demonstrating payment of this expense.  *Id.* at 24 & n.139

(citing Third Suppl. QR 7).  The information that Company X provided did not

substantiate Jingmei's claim.  *Id.* at 24 & n.140 (citing Third Suppl. QR at 7 & Ex. SQ3-

10).  Company X provided payment documentation that Commerce deemed insufficient

and a general payment ledger that lacked any identifying information to tie the ledger

entry to the purported payment.[17]  *Id.*

　　　Commerce further found that Jingmei's reporting of the sales terms was

inconsistent with what was provided in China's customs declaration documents.[18]  *See*

---

[16] Company Y provided a worksheet purporting to show how the expense tied to the
reported [[                              ]] line item on its tax returns, but Commerce found the
worksheet unsupported by "objective, reliable documentation."  *Id.* at 21 & n.137 (citing
Fourth Suppl. QR, Pt. 2 at 6 & Ex. SQ4-11).
[17] The payment documentation was insufficient because it was comprised of [[
                                    ]] that did not [[                              ]] and appeared to
be a non-final transaction.  *Id.* at 24 & n.140 (citing Third Suppl. QR at 7 & Ex. SQ3-10).
[18] In its questionnaire response, Jingmei reported that the sales to Company X were
[[      ]]; in the PRC customs declaration documents, Jingmei reported the sales terms
were [[      ]].  Second Suppl. QR at 3 & Ex. SQ2-3.

*id.* at 26 & n.145 (citing Second Suppl. QR, Ex. SQ2-3).  Commerce found that

Jingmei's explanation for the inconsistency, which suggested that Jingmei had no other

option but to report the sale term inconsistently in the PRC's customs declaration

documents, was unsupported by record evidence.  *See id.* at 26 & n.146 (citing Second

Suppl. QR at 3).  Moreover, the terms of the sale under review were different than all of

Jingmei's other sales.[19]  For all these reasons,[20] Commerce determined that this factor

weighed against a finding that the sale was *bona fide*.  *See id.* at 26-27.

### e.  Whether the Merchandise was Resold at a Profit

The agency explained that when conducting new shipper reviews, it "requires

parties to provide detailed information on the importer's purchases and ongoing

commercial operations to analyze whether the subject merchandise was resold at a

---

[19] "Jingmei's sales to [Company X] were its only sales of calcium hypochlorite during the POR that it made on [[     ]] terms, and its only sales of calcium hypochlorite where [[                              ]]."  Remand Results at 26 & n.148 (citing Third Suppl. QR, Ex. SQ3-2).

[20] Another unsubstantiated expense was [[          ]].  *Id.* at 21.  Jingmei reported that the U.S. Environmental Protection Agency ("EPA") required certification for the subject merchandise; it also provided an image of the EPA label that Jingmei used for shipping.  Third Suppl. QR at 1; Remand Results at 23.  Jingmei claimed that Company Y purchased the [[               ]] for the sale under review.  Remand Results at 21 & n.125 (citing First Suppl. QR at 3).  Commerce requested Company Y to provide accounting records showing the purchase of the [[     ]] and images of the [[     ]], including a "clear image of the labels affixed to each."  *Id.* at 21-22 & n.126 (citing Third Suppl. QR at 8-9).  Company Y submitted a handwritten accounting ledger and a "payment summary" worksheet, both of which lacked reference to any identifying information (such as invoice number, supplier name, etc.), which impeded Commerce's ability to tie Company Y's purported payment of the [[          ]] expenses to its accounting documentation.  *Id.* at 22.  Further, Company Y provided images of a [[          ]], which showed the contents to be [[                    ]], whereas the product purportedly sold in the [[               ]] was reported to Commerce as [[                    ]].  *Id.* at 22 & nn.127-129 (citing Third Suppl. QR, Ex. SQ3-13; First Suppl. QR at 15 & Ex. SQ1-8).  Additionally, the EPA label that Company Y submitted differed from the one Jingmei provided.  *Id.* at 23 & nn.134-135 (citing Fourth Suppl. QR, Pt. 1 at 3 & Ex. SQ4-2; Fourth Suppl. QR, Pt. 2 at 5-6).

profit." *Id*. at 27 & n.150 (citing *Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT ___, ___, 920 F. Supp. 2d 1350, 1359-60 (2013)).  The parties' failure to provide that information in a timely manner "indicates that the sale is non-*bona fide*." *Id*. at 27 & n.151 (citing *Foshan*, 920 F. Supp. 2d at 1360).

With respect to Company Y's disposition of the merchandise in the United States, Commerce initially requested documentation demonstrating resale of the subject merchandise, but Company Y provided sample invoices and payment documentation that accounted for less than 20 percent of the subject merchandise.  *See id*. at 28-29 & nn.153-54 (citing First Suppl. QR at 15 & Ex. SQ1-8).  Company Y did not offer any explanation or documentation to account for the disposition of the remaining merchandise.  *Id*.  Commerce then requested that Company Y provide a complete list of the subject merchandise it sold during the POR, including the customer's name, date of sale, quantity, and price.  *Id*. at 29 & n.155 (citing Second Suppl. QR at 12).  In response, Company Y provided a list of *all* its sales of calcium hypochlorite during the POR, without distinguishing subject merchandise or Jingmei's product.  *Id*. at 29 & n.156 (citing Second Suppl. QR, Ex. SQ2-14).  Commerce made a supplemental request for supporting documentation related to certain invoice numbers on that list.  *Id*. at 29 & n.157 (citing Third Suppl. QR at 9).  Company Y provided the requested invoices; however, they did not appear to be related to the subject merchandise.  *Id*. at 29 & n.158 (citing Third Suppl. QR, Ex. SQ3-14).  Based on the information that Company Y submitted, Commerce was unable to determine the price at which Company Y resold the merchandise and substantiate payment for the resale of all the merchandise.  *Id*. at 29.

Because the record lacked sufficient documentation supporting the sales price

and sales-related expenses—which would affect the profit analysis—as well as the

resale price, Commerce considered facts available with an adverse inference.  *Id.* at 27,

30.  Commerce determined that Jingmei, Company X, and Company Y failed to act to

the best of their ability because they did not provide information that they should have

been able to obtain, "e.g., evidence of payment of sales price and resale of the subject

merchandise in the United States, despite multiple requests."  *Id.* at 30.  That, in

addition to Company Y's failure to distinguish between subject and non-subject

merchandise in its list of resales, led the agency to conclude that the parties were not

fully cooperative.  *Id.* at 30, 62-63.

### f.   Whether the Sales Were Made on an Arms-Length Basis

In conducting its analysis pursuant to section 1675(a)(2)(B)(iv)(VI), Commerce

stated that it considered the relationship between Jingmei, Company X, and Company

Y; evidence of price negotiations; the terms of sale, and other circumstances

surrounding the sale.  *Id.* at 31.  The unusual circumstances surrounding the sale

indicated that the sale did not appear to be in accordance with Jingmei's normal sales

practice and further indicated that Jingmei did not demonstrate that the sale was made

at arm's length.[21]  *Id.*  Commerce found that this factor weighed against a finding that

the sale was *bona fide*.  *Id.*; *see also id.* at 59.

---

[21] Pursuant to the sales terms, Company Y supplied Eno with [[                                    ]]
delivered directly to Eno's factory, and did so before Company X submitted a purchase
order to Jingmei.  *Id.* at 31 & nn.160-62 (citing First Suppl. QR at 15 & Ex. SQ1-2; NSR
Request, Ex. 2).  Jingmei's sales to Company X were its only sales of calcium
hypochlorite where the [[                                          ]]; Company Y's purchase of
calcium hypochlorite from Jingmei was the only reported purchase through Company X

### g.  Additional Factors

In addition to the foregoing, Commerce cited other factors—the discrepancy in packaging labels,[22] the circumstances surrounding the packaging purchase,[23] and gross weight discrepancies in shipping documents[24]—as suggestive that the sales were not bona fide.  *Id.* at 32-34.

## III.   Commerce's Remand Results are Sustained

The court ordered Commerce to determine whether Jingmei's sale was *bona fide* and explained that, only then, would the court be able to evaluate whether the redetermination is supported by substantial evidence and otherwise in accordance with law."  *Haixing CVD I*, 308 F. Supp. 3d at 1372-73. As detailed above, on remand, Commerce conducted its *bona fide* analysis by evaluating the statutory factors outlined in 19 U.S.C. § 1675(a)(2)(B)(iv) and, therefore, has complied with the court's remand order.  Plaintiff makes three overarching challenges to Commerce's redetermination, which concern the agency's: (1) use of adverse inferences, (2) authority to request accounting documentation from Jingmei's customer and downstream customer, and (3) analysis of the record evidence.  *See generally* Pl.'s Opp'n Cmts.

---

for which Company Y [[                              ]].  *Id.* at 59 (citing Third Suppl. QR, Exs. SQ3-2, SQ3-9).

[22] *See supra* note 20.

[23] *See supra* note 21.

[24] Commerce noted a discrepancy between the weight recorded on the commercial invoice, [[          ]], and the weight recorded on the entry summary, [[          ]]. Remand Results at 33 & n.173 (citing Second Suppl. QR, Exs. SQ2-3 and SQ2-12). When asked about this discrepancy, Company X stated that it was not aware of why the broker reported the difference, and attributed the difference to "a kind of typographical error."  *Id.* at 33-34 (citing Second Suppl. QR at 10).  Commerce found that "[t]he weight discrepancy, and the parties' inability to explain the reasoning for it, further contribute to the totality of our analysis, which weighs against finding the sale *bona fide*."  *Id.* at 34.

### a.    Commerce's Use of Adverse Inferences

Plaintiff first argues that, in applying an adverse inference, Commerce "create[d]

a fiction that Jingmei is somehow related to its customers," Pl.'s Opp'n Cmts at 5, and

violated 19 U.S.C. § 1677e(b) by attributing the failure of Company X and Company Y

to Jingmei, a cooperating party, rather than finding that Jingmei itself failed to

cooperate. *id.* at 6-17.   Defendant and Defendant-Intervenor disagree with Plaintiff's

characterization of Commerce's findings and argue that substantial evidence supports

Commerce's decision to use adverse inferences in evaluating the price and resale

factors, and the decision was in accordance with law.   *See* Def.'s Supp. Cmts 13-17;

Def.-Int.'s Supp. Cmts at 9-12.   Plaintiff's challenges to Commerce's use of adverse

inferences are unconvincing.

Plaintiff mischaracterizes Commerce's adverse facts available determination as

premised on a finding of affiliation between Jingmei, Company X, and Company Y.   To

the contrary, Commerce explained that it based its non-*bona fide* sales determination

on a finding that Jingmei, its customer, and the downstream customer failed to

cooperate to the best of their abilities, including by failing to establish that the sale in

question occurred at arm's length.   *See* Remand Results at 8-9, 13-14, 30, 60-63.

Commerce explained that it issued four supplemental questionnaires to obtain

necessary information to conduct the *bona fide* analysis.   *Id.* at 6.   The first

supplemental questionnaire warned the parties that "[f]ailure to provide requested

information may affect the [agency's] determination as to the *bona fide* nature of the

sales subject to this review."   First Suppl. QR at 7.   Nonetheless, with respect to the

price factor, Jingmei and Company X did not provide the information in the manner

requested, and with respect to the resale factor, Company Y failed to provide

information in the manner requested.  Remand Results at 14, 30, 62-63; *supra*

Discussion Section II.a., e.  Under these circumstances, Commerce reasonably

determined that Jingmei, Company X, and Company Y failed to "put forth [their]

maximum effort to provide Commerce with full and complete answers to all inquiries in

an investigation."  *Nippon Steel*, 337 F.3d at 1382.

Plaintiff relies on *Shantou Red Garden Foodstuff Co. v. United States*, 36 CIT

___, ___, 815 F. Supp. 2d 1311, 1323 (2012) and *SKF USA Inc. v. United States*, 33

CIT 1866, 1875-1877, 675 F. Supp. 2d 1264, 1274-1275 (2009) for the proposition that

the agency "cannot punish cooperating parties," which Jingmei claims to be.  Pl.'s Opp'n

Cmts. at 12-13.  In contrast to *Shantou Red Garden*, 815 F. Supp. 2d at 1318-19,

Commerce here communicated its information requests to Jingmei and found that

Jingmei failed to cooperate to the best of its ability in responding to those requests.

Similarly, in contrast to *SKF USA Inc.*, 33 CIT at 1878, 675 F. Supp. 2d at 1274-75,

Commerce found that Jingmei itself failed to cooperate to the best of its

ability.  Commerce used the adverse inferences in interpreting the available record

information pertinent to the price and resale factors of section 1675(a)(2)(B)(iv)(I),(V) as

weighing against a finding that Jingmei's sale was *bona fide*.  Therefore, Plaintiff's

reliance on *Shantou Red Garden* and *SKF USA Inc.* is misplaced.

Moreover, the court has recently found that Commerce's use of an adverse

inference to fill gaps in the information provided by Jingmei, Company X, and Company

Y in the new shipper review of the antidumping duty order on calcium hypochlorite from

the PRC was reasonable.  *Haixing Jingmei Chem. Prod. Sales Co. v. United States*

(*"Haixing AD II"),* Slip Op. 18-129, 2018 WL 4859522, at \*8-9 (CIT Sept. 26, 2018).

Therein, the court explained that "the U.S. Court of Appeals for the Federal Circuit [has]

held that Commerce is not barred, under appropriate circumstances, 'from drawing

adverse inferences against a non-cooperating party that have collateral consequences

for a cooperating party.'" *Id.* at \*9 (quoting *Mueller Comercial de Mexico, S. de R.L. de

C.V. v. United States*, 753 F.3d 1227, 1236 (Fed. Cir. 2014)).  Pursuant to *Mueller*,

"Commerce may rely on inducement or deterrence considerations in determining a

weighted-average dumping margin for a cooperating party [if] 'the application of those

policies is reasonable on the particular facts and the predominant interest in accuracy is

properly taken into account.'" *Id.* (quoting *Mueller*, 753 F.3d at 1233).   Distinct from the

*Mueller* case, both here and in *Haixing AD II*, neither Jingmei, nor Company X or

Company Y was a cooperating party, "and Commerce did not articulate that it was

relying on an inducement rationale to reach its AFA determination." *Id.*  Commerce,

however, noted Company X's status as the importer purportedly responsible for paying

the import duties, Remand Results at 24, Jingmei's and Company X's buyer-seller

relationship, *id.* at 9, and the agency's need for accurate and reliable information in

making its *bona fide* determinations, *see e.g., id.* at 42-43.  Thus, Commerce was

guided by the principles articulated in *Mueller*, and the court finds that Commerce was

permitted to rely on adverse inferences in interpreting the available information on the

record.

> ### b.    Commerce's Authority to Request Accounting Documentation from Jingmei's Customer and Downstream Customer

Plaintiff asserts that Commerce's justification for requesting the accounting

documentation from Company X and Company Y was premised on a finding that the

companies are affiliated with Jingmei.  Pl.'s Opp'n Cmts at 15.  Plaintiff argues that this

justification is "unacceptable," *id.* at 15, and that the statutory provision addressing new

shipper reviews does not require accounting documentation from a respondent's

downstream customers, *id.* at 18.

Plaintiff misinterprets Commerce's justification for requesting the documentation

from Company X and Company Y.  Commerce considered it necessary to request

accounting documentation from these companies to fill gaps in the record or to

substantiate the purported sale terms, confirm payment of the price and expenses, and

determine whether the merchandise was resold at a profit.[25]  *See supra* Discussion

Section II.  The relevant statute concerning new shipper reviews "requires Commerce to

examine the companies on both sides of the transaction to ensure that the sales in

question are *bona fide*."  *Haixing AD II*, 2018 WL 4859522, at *9.  Notably, although the

statute requires a determination that the sale is *bona fide*, it does not mandate what

type of documents Commerce must review to make that determination or limit the

sources from which Commerce may request information.  *See* 19 U.S.C.

§ 1675(a)(2)(B)(iv).  The court has stated that Commerce's analysis of the *bona fide*

nature of a sale is dependent on the facts specific to that sale.  *Haixing AD II*, 2018 WL

4859522, at *9.  Here, considering the allocation of shipping, customs, packaging, and

other expenses among the three parties, it was incumbent upon Commerce to seek

downstream accounting information to properly determine the price at which the goods

---

[25] Commerce stated "it is not clear from the record that Jingmei, [Company X], and
[Company Y] are unaffiliated"; however, this was in the context of explaining why it was
*particularly* necessary to have the supporting accounting documentation to evaluate
both sides of the transaction and the purported expenses incurred.  *Id.* at 45-46.

were sold and whether the resale by Company Y was at a profit.  Jingmei was unable to

supply this necessary information.  Therefore, Commerce reasonably requested

information from Company X and Company Y to complete its *bona fide* analysis.[26]

### c.    Commerce's Analysis of the Record Evidence

Plaintiff argues that the record demonstrates that its U.S. sale was *bona fide*.

Pl.'s Opp'n Cmts. at 1-2, 17 (citing, *inter alia*, Pl.'s Br. at 14-15, 20-29, 33-34).  Plaintiff

characterizes Commerce's analysis of record documentation as "replete with errors," *id.*

at 23 (capitalization omitted), challenging specifically the agency's analysis concerning

the price, payment of expenses, and weight discrepancies, *id.* at 23-25.  With respect to

resale of the merchandise, Plaintiff contends that "the record contains substantial

evidence that Company Y resold the merchandise at a profit."  *Id.* at 20 (capitalization

omitted).  It maintains that the *bona fide* analysis does not require that the ultimate

customer resell all the merchandise for the sale to be considered *bona fide*.  *Id.* at 23.

At the outset, Jingmei fails to frame its case within the court's standard of review.

The standard of review is whether the agency's determination is supported by

substantial evidence on the record, not whether Jingmei's version of events is

supported by substantial evidence.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  In determining

whether substantial evidence supports Commerce's determination, the court must

consider "the record as a whole, including evidence that supports as well as evidence

---

[26] Plaintiff's remaining arguments challenging the authority upon which Commerce relied for the proposition that the agency sometimes requests supporting accounting documentation from the respondent's customers or downstream customers when conducting the *bona fide* analysis in a new shipper review, *see* Pl.'s Opp'n Cmts at 15-16, 18-20, were fully addressed and rejected in *Haixing AD II*, 2018 WL 4859522, at *9 n.16.  The court incorporates that analysis herein.

that 'fairly detracts from the substantiality of the evidence.'"  *Nippon Steel Corp. v.*

*United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting A*tl. Sugar, Ltd. v. United*

*States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  However, that a plaintiff can point to

evidence that detracts from the agency's conclusion or that there is a possibility of

drawing two inconsistent conclusions from the evidence does not preclude the agency's

finding from being supported by substantial evidence*.  Matsushita Elec. Indus. Co. v.*

*United States,* 750 F.2d 927, 933 (Fed. Cir. 1984) (citing *Consolo v. Fed. Mar. Comm'n*,

383 U.S. 607, 619–20 (1966)).  The court may not "reweigh the evidence or . . .

reconsider questions of fact anew."  *Downhole Pipe & Equip., L.P. v. United States*, 776

F.3d 1369, 1377 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

Here, Plaintiff reasserts the arguments that it made to Commerce, which

Commerce rejected with detailed and well-reasoned explanations.[27]  *Compare* Pl.'s

Opp'n Cmts. at 17-18, 20-21, 23-25 *with* Remand Results at 35-59.  The record

evidence upon which Commerce relied supports Commerce's findings with respect to

the individual factors outlined in the statute.  *See supra* Discussion Section II; Remand

Results at 35-59.  Moreover, substantial evidence supports the agency's conclusion that

the totality of circumstances indicates that Jingmei's sale was not *bona fide.  See TTPC*,

29 CIT at 275, 366 F. Supp. 2d at 1263 (agreeing with Commerce that "the *bona*

*fide* analysis involves consideration of the totality of the circumstances regarding the

sale"); *see also Changzhou Hawd Flooring Co., Ltd. v. United States*, 42 CIT ___, ___,

---

[27] The court notes that Commerce did not specifically address Plaintiff's claim that
Commerce erred in referring to an inconsistency in the gross weight of the shipment,
when in fact it referenced the net weight.  *See* Pl.'s Opp'n Cmts. at 24-25. Nevertheless,
Commerce clearly identified a weight discrepancy in the shipping documents and the
discrepancy remained unresolved. *See* Remand Results at 33-34, 59.

324 F. Supp. 3d 1317, 1321 (2018) (if Commerce's determination is "reasonable given the circumstances presented by the whole record," it will be sustained) (internal quotation marks and citations omitted).

CONCLUSION

For the foregoing reasons, the court finds that the Remand Results comply with the court's remand order.  Further, substantial evidence supports Commerce's finding that Jingmei's sale was not *bona fide*; therefore, rescission of the new shipper review was appropriate.  Judgment will enter accordingly.



                                                    /s/      Mark A. Barnett
                                                                 Judge


Dated: December 27, 2018
           New York, New York